UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

| Present: The Honorable | Alka Sagar, United States Magistrate Judge | |
|---|---|---|
| Alma Felix | | CS 12/09/15 |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Movant: | | Attorneys Present for Defendants: |
| Jonathan Louis Segal | | Kevin P. Dwight |

**Proceedings (In Chambers):**    **Order DENYING Defendants' Motion to Compel [2]**

On December 9, 2015, the Court heard argument on Defendant Consolidation Coal Company's Motion to Compel Compliance with Subpoena Served on Third-Party Bonnie E. Stewart ("Motion to Compel") (Docket Entry No. 2).  For the reasons stated below, Defendant's Motion to Compel is DENIED.

I.    <u>Introduction</u>

The events giving rise to this case occurred nearly five decades ago.  On November 20, 1968, the Consol No. 9 Mine in Farmington, West Virginia, exploded.  The explosion caused the deaths of seventy-eight miners.

Over the next twenty-two years, the United States government undertook an investigation of the explosion.  While the government was unable to discern the exact cause of the explosion, it concluded that the explosion was caused, in part, by inadequate ventilation in parts of the mine.  One of those called upon to investigate the incident was Lawrence Layne, a Bureau of Mines inspector.  During the investigation, Mr. Layne discovered that the No. 3, or "Mod's Run,"[1] ventilation fan was non-operational at the time of the explosion.  Additionally, Mr. Layne found that the fan's FEMCO alarm system, which would have alerted mine workers of the ventilation fan's non-operational status, had been electrically bypassed, rendering the alarm

---

[1] Mod's Run refers to the location of the No. 3 ventilation fan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

inoperable.  Mr. Layne recorded his findings in a handwritten memorandum on September 15, 1970.  The memorandum stated:

> On September 5, 1970, 12am-8am shift, the Mods Run substation was energized for the first time since the explosion of November 20, 1968.  The electrician (name withheld by request) reported that while energizing the substation he found evidence to indicate that the Femco fan alarm system for Mods Run fan had been rendered inoperable prior to the explosion. The fan alarm system had been bridged with jumper wires; therefore, when the fan would stop or slow down, there was no way of anyone knowing about it because the alarm system was bypassed . . . .

(Docket Entry No. 2-1 at 14).

On November 6, 2014, Plaintiffs filed a Complaint ("Compl.") in the Circuit Court of Marion County, West Virginia.[2]  Plaintiffs are the estates of the seventy-eight miners who perished in the November 20, 1968, explosion.  (Docket Entry No. 2-1 at 17).  Defendants are Consolidation Coal Company ("CCC"), whose subsidiary owned and operated the No.9 Farmington Mine, and the Estate of Alex Kovarbasich, an electrician employed by CCC who worked at the No. 9 Farmington Mine at the time of the explosion.  (Docket Entry No. 2-1 at 20–24).  The Complaint lists the sole cause of action as fraud, concealment, and nondisclosure surrounding the disabling of the Mod's Run fan and its alarm.  (Docket Entry No. 2-1 at 20–24).

On December 12, 2014, Defendant CCC removed the case to the United States District Court for the Northern District of West Virginia.[3]

---

[2] The Court takes judicial notice of the records of the United States District Court for the Northern District of West Virginia, available on the PACER database.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

[3] Plaintiffs have filed a motion for remand and Defendants have filed a motion to dismiss, both of which are still pending before the District Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

On February 9, 2015, Plaintiffs sought the District Court's leave to depose Leonard Sacchetti, a former CCC employee. (Docket Entry No. 2-1 at 71). Plaintiffs asserted that Mr. Sacchetti was an electrician who worked at the No. 9 Farmington mine at the time of the explosion and that he had "knowledge of the exact identity" of the person responsible for disabling the alarm system on the Mod's Run fan. (Id. at 88–91). On March 26, 2015, Plaintiffs deposed Mr. Sacchetti. (Id. at 128–34). Mr. Sacchetti testified that, while he was an electrician who worked for Defendant CCC, he did not work at the No. 9 Farmington mine and had no information regarding who was responsible for bypassing the alarm system on the Mod's Run fan. (Id.)

Following Mr. Sacchetti's deposition, Plaintiff's sought the District Court's leave to conduct discovery regarding Mr. Layne, the former Bureau of Mines inspector. On or around April 30, 2015, Plaintiffs' counsel informally met with Mr. Layne in Alabama. (Docket Entry No. 2 at 10). On April 30, 2015, Mr. Layne signed an affidavit stating that Mr. Sacchetti was the electrician whose name was withheld in the September 15, 1970 memorandum. (Docket Entry No. 2-1, 161–64). Furthermore, Mr. Layne swore in the affidavit that "Mr. Sacchetti told me that he and the chief electrician, Alex Kovarbasich, disconnected the FEMCO alarm on the [No. 3] fan before the November 20, 1968 explosion." (Id.) Mr. Layne also stated in the affidavit that it was his understanding "that Consolidation Coal Company directed Alex Kovarbasich to disconnect the FEMCO alarm on the [No. 3] fan prior to the November 20, 1968, explosion." (Id.)

II.    Proceedings

On September 1, 2015, Defendants served a subpoena on Bonnie Stewart, an investigative journalist who, in 2012, published a non-fiction book titled No. 9, The 1968 Farmington Mine Disaster, detailing the November 20, 1968, explosion and the subsequent investigation. While researching for her book, Ms. Stewart spent January 17 and 18, 2009, interviewing Mr. Layne regarding his investigation and his findings. (Docket Entry No. 2-1 at 185). This included questions and answers relating to Mr. Layne's September 15, 1970 memorandum. (Id. at 182–84). Ms. Stewart apparently published at least some of the information that she gathered during these interviews in her book. (Id. at 182–85). The September 1, 2015, subpoena seeks production of various materials in connection with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|-----|------------------------|------|-------------------|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

publication her book.  (Docket Entry No. 2-1 at 194–205).  At issue here is Request No. 11, which requires Ms. Stewart to turn over:

> Any and all documents that depict, describe or otherwise relate in any way to written or verbal communications between you, your agent, or your representatives and Lawrence Leroy ("Larry") Layne, including but not limited to your interviews of Layne on January 17 and 18, 2009, or on any other date(s), concerning the November 20, 1968 explosion at the No. 9 Mine in Farmington, West Virginia; written or verbal communications between Layne and his supervisor, senior status investigators, or others on November 20, 1968; Layne's work as an inspector on the surface area of the No. 9 Mine during the recovery and rehabilitation of operations; the memorandum prepared by Layne on September 15, 1970 which is referenced . . . at pp. 160–162 of your book . . . *No. 9, The Farmington Mine Disaster*; written or verbal communications between Layne and . . . Sacchetti; and written or verbal communications between Layne and Alex Kovarbasich.

(Docket Entry No. 2 at 12).

Ms. Stewart objected to Request No. 11 and refused to provide any pre-publication documents to Defendants.  (Docket Entry No. 2 at 5 – 6).  Among other objections, Ms. Stewart asserted the First Amendment qualified journalist's privilege against the subpoena.  (Id. at 13).

Though Ms. Stewart objected to Request No. 11 of the subpoena, on October 6 and 9, 2015, Ms. Stewart honored Request Nos. 1–10.  (See Docket Entry No. 2-4 at 2).  In response to these requests, Ms. Stewart produced over nine-hundred pages of documents, including printouts of numerous e-mails exchanged between Ms. Stewart and Plaintiffs' counsel.  (Id. at 2, 94).  Many of the e-mails offer information about public records sought by Plaintiffs.  (Docket Entry No. at 2-4 at 24-54).  Additionally, in a March 25, 2015, e-mail to the Hon. Jim Matish, a putative class member in the case, Ms. Stewart relayed portions of interviews she conducted with various individuals while researching her book.  (Docket Entry No 2-1 at 267).  Specifically, Ms. Stewart stated in the e-mail that "Larry and I went to visit Leonard Sacchetti . . . . The man we visited wouldn't talk to us, but Larry said he was the person who reported to him that the fan was disabled."  (Id.)  Additionally, Ms. Stewart's e-mail included short statements regarding interviews with other individuals, all of them indicating that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

someone other than Mr. Sacchetti or Defendant Kovarbasich bridged the alarm system on the Mod's Run fan.[4] (Id.)

On October 28, 2015, the parties filed a Joint Stipulation re Defendant's Motion to Compel ("Joint Stip.") setting forth their respective positions on Defendant's motion. (Docket Entry No. 2). Defendant claims that it has overcome Ms. Stewart's assertion of the First Amendment qualified journalist's privilege and that, in any event, Ms. Stewart had waived the privilege by divulging information to Plaintiffs' counsel and others. (Joint Stip. at 25–28). In opposition, Ms. Stewart argues that Defendant has not made the requisite showing to overcome the privilege as it has been articulated by the Ninth Circuit. (Id. at 29–37). She also argues that she has not waived the privilege. (Id. at 37–41).

On October 30, 2015, Defendants filed an amendment to the Motion to Compel. (Docket Entry No. 6). The amendment provided the Notice of the Motion to Compel, which had been omitted from the filing of the Motion. (Id. at 2).

On November 19, 2015, the parties filed Supplemental Memoranda in support of their respective positions on the Motion to Compel. (Docket Entry Nos. 12, 13). Defendant's Supplemental Memorandum further briefs the issue of waiver, arguing that notions of fairness require the Court to construe Ms. Stewart's provision of information to Plaintiffs as an implied waiver. (Docket Entry No. 12 at 2–6). In support of this contention, Defendant asserts that it has been prejudiced by Ms. Stewart's selective disclosure of information favorable only to Plaintiffs. (Id. at 3–5). Defendant argues that this prejudice results in an implied waiver of Ms. Stewart's privilege and requires her to turn over all of her materials relating to her interviews with Mr. Layne. (Id. at 3). In response, Ms. Stewart avers that she has neither expressly nor impliedly waived her journalist's privilege since she has provided the same documents to both parties, removing any risk of prejudice to one party. (Docket Entry No. 13 at 2–3). Ms.

---

[4] Specifically, Ms. Stewart's e-mails reference her interviews of Tom Boone, John Saprito, and Stanley Plachta. (Docket Entry No. 2-1 at 267). According to Ms. Stewart's e-mails, Tom Boone would not tell her who bridged the alarm on the Mod's Run fan, John Saprito stated he never worked on the fan, and Stanley Plachta stated that a man named Louie Gardi was the "electrician that may have dismantled the Mods fan." (Id.) Ms. Stewart noted in her e-mail that she "could never confirm" Stanley Plachta's claim. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|-----|------------------------|------|-------------------|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

Stewart further posits that even if she did waive the privilege, she was not required to turn over all of the materials associated with the waiver.  (Id. at 4–6).

III.   Discussion

A. Journalists Privilege

Under the First Amendment, journalists have a privilege protecting them from the "compelled disclosure of information gathered in the course of their work."  See Shoen v. Shoen, 48 F.3d 412, 414 (9th Cir. 1995) (citations omitted) (hereinafter "Shoen II").  However, the privilege is qualified, not absolute, and may be overcome.  Shoen v. Shoen, 5 F.3d 1289, 1292–93 (9th Cir. 1993) (hereinafter "Shoen I").  In order to overcome the privilege, the party seeking information must show "that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."  Shoen II, 48 F.3d at 416.  This test "ensure[s] that compelled disclosure is the exception, not the rule."  Id.

In Shoen I, the Ninth Circuit considered whether plaintiffs could compel an author to produce records of his interviews with the defendant, whom the plaintiffs had not attempted to depose. 5 F.3d 1296–97.  Up to that point, the plaintiffs had relied solely on written interrogatories and requests for admission in their attempts to gain information from the defendant.  Id. at 1297.  The court found that the plaintiffs, in failing to depose the defendant, had not shown that "the information [was] not obtainable from another source" outside the author's materials.  Id. at 1296.  In doing so, the court distinguished written discovery requests from depositions, opining that "only by examining a live witness can a lawyer use the skills of his trade to plumb the depths of a witness' recollection."  Id. at 1297.  The court further stated that "compelled disclosure from a journalist must be a last resort after pursuit of other opportunities has failed," id. at 1297, and noted that the defendant-interviewee was the "most patently available other source" for the information sought,  id. at 1298 (internal quotations omitted).

The Court finds that the Ninth Circuit's holding in Shoen I forecloses the issue of whether Defendants have overcome the First Amendment qualified journalist's privilege.  Here, Defendants have failed to depose Mr. Layne (Docket Entry No. 2 at 23–24), the "most patently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|-----|------------------------|------|-------------------|

| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* |
|-------|-------------------------------------------------------------------|

available other source for the information sought," <u>Shoen</u>, 5 F.3d at 1298. Furthermore, the court in <u>Shoen I</u> expressly found the use of interrogatories and requests for admission inadequate to show that alternative means of obtaining the information had been exhausted. <u>Id.</u> at 1296. Likewise, Defendant cannot show that the information sought is unobtainable prior to deposing Mr. Layne, regardless of any other written discovery methods they may employ. Based on Defendant's failure to show that the requested materials are "unavailable despite the exhaustion of all reasonable alternative sources," the Court finds that Defendant has not satisfied the first element of the test articulated in <u>Shoen II</u>. <u>See Shoen II</u>, 48 F.3d at 416. Therefore, Defendant has not overcome Ms. Stewart's qualified privilege.

B.     Waiver

As with other privileges, the First Amendment qualified journalist's privilege may be waived. <u>See Ayala v. Ayers</u>, 668 F.Supp.2d 1248, 1250 (S.D. Cal. 2009) (citation omitted). Like the attorney-client privilege, the journalist's privilege is rooted in concepts of fundamental fairness. <u>See id.</u>; <u>see also Tennenbaum v. Deloitte & Touche</u>, 77 F.3d 337, 340–41 (9th Cir. 1996) ("The doctrine of waiver of the attorney client privilege is rooted in the notions of fundamental fairness."). As a result, courts may find that a journalist has impliedly waived the privilege when fairness requires such a finding. <u>See Sims v. Blot</u>, 534 F.3d 117, 132 (2d Cir. 2008) ("[W]e have held that a waiver may be implied in circumstances where it is called for in the interests of fairness.") (cited with approval in <u>Ayala</u>, 668 F.Supp.2d at 1250). Fairness requires such a waiver where a journalist has provided information to one litigant but refuses to provide that same information to an opposing party. <u>See Pinkard v. Johnson</u>, 118 F.R.D. 517, 523 (M.D. Ala. 1987) (finding that a journalist waived his privilege when he gave plaintiff's counsel a signed affidavit concerning the nature and substance of a conversation at issue); <u>see also Ayala</u>, 668 F.Supp.2d at 1250; <u>Sims</u>, 534 F.3d at 132 (implied waiver will be found when a privilege is "use[d] both as a shield and a sword"); <u>In re von Bulow</u>, 828 F.2d 94, 101 (2d Cir. 1987) (a privilege holder may not selectively disclose information to one litigant and then withhold that same information from another).

The Court finds that Defendant has not shown that principles of fairness require finding an implied waiver under these circumstances. Here, Ms. Stewart has provided all of the same information to both parties. (Docket Entry No. 13 at 5). Therefore, Defendant has not been deprived of any information that Plaintiffs possess, precluding the possibility that a selective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

provision of information solely to Plaintiff has prejudiced Defendant.[5]

Additionally, the Court is unpersuaded by Defendant's argument that Ms. Stewart's disclosures have prejudiced Defendant and thus impliedly waived her privilege as to all of her materials relating to Mr. Layne. The information disclosed by Ms. Stewart, even in her e-mails, does not appear to prejudice Defendant. Ms. Stewart's March 25, 2012, e-mail simply names Mr. Sacchetti as the unnamed electrician in Mr. Layne's 1970 memorandum. (See Docket Entry 2-1 at 267). Likewise, the remainder of the information in the e-mails, which may or may not have been public, does not patently help or harm either party. In any event, both parties now possess the information, much of which was public record to begin with. (Docket Entry No. 2-4 at 6–22, 28–34). It is also unclear whether Ms. Stewart possesses any information that would be helpful to Defendant. (See Docket Entry No. 2-4 at 3–4). The Court is unaware of any law supporting a conclusion that Ms. Stewart waived her otherwise validly asserted privilege because she released non-prejudicial information to both parties and potentially possesses undisclosed information that aids one litigant and not the other.[6]

---

[5] The District Court granted Defendant leave to conduct limited discovery in anticipation of Mr. Layne's deposition. (Docket Entry No. 2-1 at 170). Because both parties now each possess the same roughly 1,000 pages of documents from Ms. Stewart, the Court is satisfied that the parties are on equal footing in accordance with the District Court's order. It also appears to be in accordance with Defendant's argument in the Joint Stip. (Docket Entry No. 2 at 24) ("Justice therefore requires that CCC be given access to the same body of materials [as Plaintiffs].").

[6] Weil v. Inv./Indicators, Research and Mgmt., Inc., 647 F.2d 18 (9th Cir. 1981), which is cited by Defendant, does not support finding an implied waiver under these circumstances. In Weil, the defendants divulged an attorney-client communication during a deposition. Id. at 23. The communication was harmful to the defendant's case and directly helpful to the plaintiffs'. Id. at 23 – 24. Under those circumstances, the court found that the plaintiffs were entitled to discovery on the subject of the disclosure. Id. at 24–25. However, the facts of this case differ from those in Weil in several significant ways. Specifically, Ms. Stewart is not a party to the underlying litigation, it is unclear whether she possesses any further information about Mr. Layne, and both parties in this case possess the same information. Based on these distinctions, the Court declines to extend the reasoning in Weil to the present circumstances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 15-00275-MWF (ASx) | Date | December 11, 2015 |
|---|---|---|---|
| Title | *Michael D. Michael, et al. v. Estate of Alex Kovarbasich, et al.* | | |

Finally, a finding for Defendant might incentivize authors not to publish their written works. It is likely that, in many non-fiction works, a published fact may be favorable to a future litigant but unfavorable to that litigant's opponent. Under the standard Defendant proposes, a party that is disadvantaged by a published fact may uncover an author's pre-publication materials solely because those materials may counter the published fact. Surely, such a principle was not envisioned by the Ninth Circuit when it articulated that disclosure of a journalist's or author's information was to be the exception, not the rule. Shoen II, 48 F.3d at 416 ("The test [to overcome the privilege] must therefore ensure that compelled disclosure is the exception, not the rule.").

Because the Court cannot discern a way in which Defendant was definitively prejudiced by any of Ms. Stewart's disclosures, "notions of fundamental fairness" do not require the Court to find that Ms. Stewart waived the qualified journalist's privilege. Since the Court finds that Ms. Stewart did not waive the privilege, it is unnecessary to determine to which materials any waiver extends.

IV.   Conclusion

Based on the foregoing discussion, the Court finds that Ms. Stewart has not waived her qualified journalist's privilege. Moreover, Defendant has not overcome Ms. Stewart's assertion of that privilege. As a result, Defendant Consolidation Coal Company's Motion to Compel is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

cc: Michael W. Fitzgerald
      United States District Judge

|  | 1 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | AF | |